UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TALMITCH JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No: 02 C 3957 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Talmitch L. Jackson, filed a Sixth Amended Complaint, alleging a series of illegal activities against the Federal Bureau of Investigation ("FBI"). Specifically, Jackson makes six separate allegations: race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), retaliation in violation of Title VII, violations of the Freedom of Information Act ("FOIA") and of the Privacy Act of 1974 ("Privacy Act"), a separate violation of the Privacy Act, violation of Plaintiff's First Amendment rights, and violation of Plaintiff's Fifth Amendment rights. Currently before the Court is the FBI's Motion to Dismiss all counts of the Sixth Amended Complaint.

## BACKGROUND

A reading of the Sixth Amended Complaint supports the following summary of the alleged operative conduct of the parties.

Jackson is an African-American male. On or about February 13, 1990, Jackson applied for employment with the FBI as a special agent. At that time, the FBI had in place an affirmative-action program intended to correct past discrimination and under-representation of minorities. To this end, certain minority applicants, including African-American males, were

designated as "specialized needs." The FBI also prioritized the hiring of applicants who met entry requirements and possessed one or more of the following "critical skills": law enforcement or other investigative experience, a degree in engineering or an engineering-related field, intelligence experience, and knowledge of physical sciences. Prior to his application for the position as special agent, Jackson had held various positions as both a Cook County Sheriff's Police Officer and a Chicago Police Department Officer. As a result, he possessed law enforcement experience, investigative experience, and intelligence experience.

Jackson took both the FBI special agent written exam and the trigger-pull test on or about April 11, 1990, and received passing scores of 94 and 84, respectively. His written score qualified him for employment as a special agent under the FBI's minority and science programs. On or about June 25, 1990, Jackson was interviewed by three FBI agents at the FBI's Chicago office. The agents gave Jackson a score of 52.25 out of 55 possible, determined that he was suitable for the special agent position, and recommended that he be hired in that capacity.

The FBI then performed a background investigation on Jackson, which included interviews with college professors and past supervisors and colleagues. Former FBI agent Joseph Calvin Jackson reported a number of false statements related to Jackson's prior employment with the Chicago Fire Department ("CFD"). On or about November 26, 1990, Jackson informed the FBI that these statements were false, specifically warning that members of the CFD were retaliating against him for his past protected activity.[1] The FBI never amended its records to exclude the false statements.

---

[1] In fact, the Illinois Department of Human Rights found substantial evidence that the CFD discriminated against Plaintiff and also found that the CFD retaliated against Plaintiff's opposition to the racial discrimination by issuing disciplinary reports against Plaintiff and providing a negative assessment in response to the FBI background investigation.

Subsequently, the FBI decided not to hire Jackson for the special agent position and notified him via a May 1, 1991 letter. This decision was made by a white male, and the position remained open. After that date, the FBI continued to seek and hire predominantly white applicants; and much of the hiring under the minority program was of white women. Some of those hired as special agents after Jackson's application was denied had lower qualifying scores and/or fewer "critical skills" than Jackson.

On May 15, 1991, Jackson requested from the FBI the specific reasons for its denial of his application, as well as a complete copy of the background investigation, pursuant to the FOIA. The FBI did not supply Jackson with the requested files until August 5, 1992. On December 13, 1992, Jackson filed a complaint with the FBI as a result of, what he considered to be, a discriminatory hiring process. After the Department of Justice ("DOJ") determined that the FBI had not discriminated against him, Jackson appealed the DOJ's final agency decision to the U.S. Equal Employment Opportunity Commission ("EEOC"). Jackson did not receive a copy of the EEOC's final decision, in the form of a "right to sue" letter, until March 4, 2002.

On April 23, 2003, during the pending civil suit, U.S. Attorney Jonathan C. Haile filed a copy of Jackson's FBI special agent application as an exhibit. Portions of the FBI's background investigation on Jackson were also filed with the Court. These documents contained personal information about Jackson, his family, and his friends. Haile never sought or received permission from the Court, Jackson, or his family members or friends to publish the information.

## LITIGATION HISTORY

In June 2002, Jackson filed his first Complaint, *pro se*. In April 2003, Defendants moved to dismiss Jackson's Complaint. In response to Defendants' Motion to Dismiss, Jackson sought, and received, leave to file an Amended Complaint by August 28, 2003. Jackson later moved for,

and received, an extension of time to file the amended complaint. Jackson then proceeded to miss the new September 29, 2003 deadline; but the Court granted his motion to file the amended complaint *instanter*. Jackson did not file his *pro se* First Amended Complaint until November 2003.

In January 2004, Jackson was given leave to file a Second Amended Complaint. In June 2004, Jackson filed his Second Amended Complaint, *pro se*. Subsequently, Defendants moved to dismiss the Second Amended Complaint. In October 2004, the Court granted Defendants' Motion to Dismiss, finding that Jackson's Second Amended Complaint failed to comply with Federal Rule of Civil Procedure 8(a). The Court also granted Jackson thirty days to file a third amended complaint, which Jackson failed to do. The case was dismissed in January 2005.

Jackson moved to vacate the January 2005 dismissal and sought leave to file a third amended complaint. In February 2005, Jackson filed, *pro se*, his Third Amended Complaint. Defendants moved to dismiss Jackson's Third Amended Complaint, again, for failure to comply with Federal Rule of Civil Procedure 8(a). In April and May 2005, the Court granted Jackson's motions for extension of time to respond to Defendants' Motion to Dismiss. In July 2005, the Court granted Defendants' Motion to Dismiss, finding that Jackson's Third Amended Complaint still failed to comply with Federal Rule of Civil Procedure 8(a). The Court granted Jackson thirty days to file a fourth amended complaint, noting that Jackson's continued failure to comply with Rule 8(a) might result in dismissal of Jackson's future amended complaint with prejudice.

In August and September 2005, the Court granted Jackson's motions for extension of time to file an amended complaint. Jackson was given leave to file the amended complaint on or before September 9, 2005. Jackson did not file a fourth amended complaint and did not move

for an extension of time to file such a complaint on or before that date. Defendants then moved to dismiss the case for Jackson's failure to prosecute the case and/or for Jackson's failure to follow the Court's order to file an amended complaint on or before September 9, 2005. The Court entered a briefing schedule on Defendants' Motion to Dismiss, allowing Jackson until November 2, 2005, to file his response brief. Jackson missed this deadline, but his motion for an extension of time to file his response brief was granted.

In December 2005, the Court denied Defendants' Motion to Dismiss and gave Jackson leave to file a fourth amended complaint within thirty days. Specifically, the Court ruled that this was to be the final extension of time to file an amended complaint, warning Jackson that failure to file a timely amended complaint might result in dismissal with prejudice. Per the Court's ruling, Jackson's Fourth Amended Complaint was to be filed on or before January 12, 2006. Jackson did not meet this deadline. Jackson sought leave to file his Fourth Amended Complaint *instanter*, but his motion was denied when he failed to appear at the January 2006 status hearing.

In March 2006, the Court granted Jackson's motion to reconsider the denial of his motion for leave to file his Fourth Amended Complaint and gave Jackson leave to file his Fourth Amended Complaint. Defendants proceeded to move to dismiss Jackson's Fourth Amended Complaint in April 2006. A briefing schedule was entered on the pending motion, but Jackson failed to timely file a response to Defendants' motion to dismiss; instead, he belatedly filed a motion to extend the time to file a response to the motion, which the Court granted. Jackson then retained counsel and, in July 2006, chose to file a motion seeking leave to belatedly file a fifth amended complaint, instead of filing a response to the pending motion.

Jackson's motion to file a fifth amended complaint was granted, and Jackson filed his Fifth Amended Complaint in July 2006. In August 2006, Defendants again moved to dismiss Jackson's amended complaint for failure to comply with Federal Rule of Civil Procedure 8(a). Another briefing schedule was entered, and Jackson again did not file a response to the motion to dismiss. In January 2007, the Court granted Defendants' Motion to Dismiss, finding, with respect to most counts, that the Fifth Amended Complaint failed to comply with Rule 8(a) and, with respect to the only remaining count, that Jackson had failed to name a proper party. The Court also found that Jackson had failed to serve any of the individual Defendants. Once again, the Court granted Jackson thirty days in which to file another amended complaint.

Jackson filed a timely Sixth Amended Complaint on March 1, 2007, this time naming the FBI as the only defendant. In May 2007, the FBI filed a motion to dismiss the Sixth Amended Complaint; and a briefing schedule was entered. As before, Jackson filed no response to this motion. The FBI's Motion to Dismiss Jackson's Sixth Amended Complaint is presently pending.

## ANALYSIS

The Federal Rules of Civil Procedure provide that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In interpreting what is required to sufficiently plead a claim, the Unites States Supreme Court, in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (*Bell Atlantic*), recently held: "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1968 (internal citations omitted). The

*Bell Atlantic* Court reasoned that "[we require] only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974.

This new pleading standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]"; and, "of course, a well pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Walker v. S.W.I.F.T. SCRL*, ___ F. Supp. 2d ___, ___ ( N.D. Ill. 2007), 2007 WL 1704293, at *2 (*Walker*). Accordingly, the Court will only allow a plaintiff's claim to survive a motion to dismiss for failure to state a claim when "the claim [is] supported by facts that, if taken as true, at least plausibly suggest that [the plaintiff] is entitled to relief." *Messner v. Calderone*, 2007 WL 1832116, at *2 (N.D. Ill. June 25, 2007).

*Count I*

Count I of Jackson's Sixth Amended Complaint alleges race discrimination, in violation of Title VII of the Civil Rights Act of 1964.

Title VII provides, in part:

> Within 90 days of receipt of notice of final action taken by a department, agency, or unit . . . or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, . . . or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken . . . an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action . . . in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant.

42 U.S.C. § 2000e-16(c). Relevant to the instant case is the explicit statutory requirement that the defendant named in any Title VII civil action be the *head* of the appropriate department, agency, or unit. *See* 42 U.S.C. § 2000e-16(c); *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1322 (7th Cir. 1984). Plaintiff has not named the head of any department, agency, or unit as a defendant in his most recent complaint; the FBI is not an appropriate defendant for this claim.

Also relevant to the instant case is the statute of limitations established for the filing of any civil action brought pursuant to the section. A plaintiff has ninety days after receipt of notice of final action taken by the EEOC in which to file suit. 42 U.S.C. § 2000e-16(c). "Unless proven otherwise, the receipt date [of notice] is presumed to be five days from the mailing date." *Lloyd v. Sullivan*, 882 F.2d 218, 218 (7th Cir. 1989). "The time limit is not flexible, even for *pro se* litigants, and a one-day delay is fatal." *Davis v. Browner*, 113 F. Supp. 2d 1223, 1225 (N.D. Ill. 2000).

Jackson asserts that he did not receive notice of the EEOC's final decision until March 4, 2002. The FBI argues that the EEOC issued and mailed its decision on December 20, 2001, and that the traditional five-day presumption should apply, setting the date of receipt no later than December 25, 2001. Whether the date of receipt was December 25 or March 4 is, in this case, of little consequence. Whatever the date of Jackson's receipt of the "right to sue" letter, his ability to file a related civil action expired ninety days later. Even if March 4 were to be used as the date of actual notice, his Title VII discrimination claim is barred by the statute of limitations; Jackson filed his first complaint on June 3, 2002, ninety-one days after March 4. Because he failed both to name a proper defendant for his Title VII discrimination claim and to timely file that claim, Count I of Jackson's Sixth Amended Complaint is dismissed with prejudice.

*Count II*

Count II of Jackson's Sixth Amended Complaint alleges retaliation, in violation of Title VII of the Civil Rights Act of 1964.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (*Cheek*); *see also McKenzie v. Illinois Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996) (*McKenzie*) (holding that retaliatory acts occurring prior to the filing of an EEOC charge, but not included in that charge, cannot later serve as the basis for a retaliation claim in a civil complaint). "This rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute . . . and of giving the employer some warning of the conduct about which the employee is aggrieved." *Cheek*, 31 F.3d at 500. Although not jurisdictional, the rule is a condition precedent with which all Title VII plaintiffs must comply, "[f]or allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek*, 31 F.3d at 500.

However, because Title VII of the Civil Rights Act was designed "to protect those least able to protect themselves" and because complainants to the EEOC are seldom lawyers, a complaint in a civil action may properly encompass any Title VII claims "like or reasonably related to the allegations of the [plaintiff's EEOC] charge and growing out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*), *cert. denied*, 429 U.S. 986 (1976) (*Jenkins*) (holding that plaintiff had sufficiently charged both racial and sex discrimination on her EEOC form, even though she failed to check the sex discrimination box on the form). The standard set forth in *Jenkins* has been described as a two-

part requirement: first, there must be "a reasonable relationship between the allegations in the charge and the claims in the complaint"; second, "the claim[s] in the complaint [must] reasonably be expected to grow out of an EEOC investigation of the allegations in the charge." *Cheek*, 31 F.3d at 500.

In order for the claims to be like or reasonably related, a factual connection must exist; and "the EEOC charge and the complaint must, at minimum, describe *the same conduct* and implicate *the same individuals.*" *Cheek*, 31 F.3d at 501 (emphasis in original). Discrimination and retaliation claims are not normally considered to be like or reasonably related; a plaintiff's failure to check the box for retaliation on the EEOC charge form or make any allegation of retaliatory acts therein will bar later inclusion of a retaliation claim in his complaint. *Swearingen-El v. Cook County Sheriff's Dep't.*, 416 F. Supp. 2d 612, 616 (N.D. Ill. 2006) (*Swearingen-El*).

Here, Jackson did not check the box labeled "Reprisal" on his EEOC charge form. He checked only the "Race or Color" and "Sex" discrimination boxes. Yet, paragraph 10 of his written complaint, attached to the form, reads:

> There is a direct relationship between the adverse employment decision of the FBI in claiming the applicant is not among the most qualified of applicants, and complainant's EEOC complaint against the CFD. The FBI has yet to explain how, objectively or otherwise, the accepted white applicants were more qualified than complainant.

Consequently, the situation presented in this case is more akin to *Jenkins* than *McKenzie* or *Swearingen-El*. In the cases precluding Title VII retaliation claims, the plaintiffs had initially alleged only discrimination, making no reference of any kind to retaliation. Here, like in

*Jenkins*, the plaintiff failed to check the appropriate box for the additional claim on the EEOC charge form but directly alleged in attached written statements illegal activity that would have supported such a claim.

Both requirements of the standard set forth in *Jenkins* are met in the instant case. First, there certainly exists a "reasonable relationship" between the allegations in paragraph 10 of Jackson's EEOC charge and the Title VII retaliation claim in his Sixth Amended Complaint. Jackson never used the term "retaliation" in his EEOC charge, but his words can be construed to imply nothing but an accusation of retaliation. Second, a reasonable investigation by the EEOC would have looked into the allegations contained in paragraph 10 of Plaintiff's EEOC charge. The retaliation claim would necessarily grow out of such an investigation. Indeed, Jackson's EEOC charge and the retaliation claim in his Sixth Amended Complaint describe the same conduct and implicate the same individuals. In the spirit of Title VII of the Civil Rights Act, he must be allowed to include a Title VII retaliation claim in this action. Only a missing checkmark clouds an otherwise clearly articulated claim of retaliation; such an oversight should not prove fatal.

Having established that Jackson's inclusion of a Title VII retaliation claim in his Sixth Amended Complaint was proper, analysis of Count II mirrors that of Count I. As with Count I, Jackson improperly named the FBI as the Defendant for his Title VII claim. Furthermore, because the same ninety-day statute of limitations applies, Count II is similarly untimely. For these reasons, Count II of Jackson's Sixth Amended Complaint is dismissed with prejudice.

*Count III*

Count III of Jackson's Sixth Amended Complaint alleges inaccurate recordkeeping and intentional delays in disclosure of records, in violation of both the Freedom of Information Act and the Privacy Act of 1974.

The so-called "catch-all" statute of limitations provision for civil suits filed against the United States provides: "Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The FOIA is subject to this general six-year statute of limitations. *Macklin v. United States*, 300 F.3d 814, 821 (7th Cir. 2002). The statute of limitations on an FOIA claim begins to run when the action arises, at the time the plaintiff exhausts available administrative remedies. *McClain v. U.S. Dep't of Justice*, 1999 WL 759505, at *4 (N.D. Ill. Sept. 1, 1999) (*McClain*). A plaintiff may exhaust administrative remedies either constructively or actually, and "[t]he FOIA permits requesters to treat an agency's failure to comply with its specific time limits as constructive exhaustion of remedies." *McClain*, 1999 WL 759505, at *4, *citing* 5 U.S.C. §552(a)(6)(C).

The Privacy Act has a more stringent statute of limitations, providing that:

> An action to enforce any liability created under this section may be brought . . . within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation.

5 U.S.C. § 552a(g)(5). The two-year statute of limitations for a Privacy Act claim "starts to run

when the plaintiff first knew or had reason to know of a violation." *Davis v. U.S. Dep't of Justice*, 204 F.3d 723, 726 (7th Cir. 2000). "A Privacy Act claim is not tolled by continuing violations." *Davis*, 204 F.3d at 726.

Here, Jackson alleges that the FBI's illegal activities took place between June 5, 1991 and August 5, 1992. The reasoning behind the determination of these dates is somewhat unclear, but it appears that Jackson counted twenty calendar days from his initial May 15, 1991 request for records and used the twenty-first day as the beginning date of unlawful behavior. Although the distinction is ultimately moot, it should be noted that using the statutory time limit provided by Plaintiff, no unlawful delay in the production of records could have begun until June 13, 1991, the day after the statutory limit of twenty *working* days for production of the requested information had expired. Jackson's supplied ending date is the date on which he received the records.

Giving Jackson the benefit of all possible inferences within the constraints of the information included in his Sixth Amended Complaint, it shall be assumed that Jackson exhausted his available administrative remedies when he received his requested records on August 5, 1992, and that he first had reason to know of the violations for which he brings suit on that same date. Even using these dates, his claims under the Privacy Act and the FOIA are barred by the relevant statutes of limitation. Plaintiff did not file his first complaint until June 3, 2002, nearly a decade later. By this time, the respective two- and six-year statutes of limitation for any possible claims under either the Privacy Act or the FOIA had long since run. As was the case with Counts I and II, Count III of Jackson's Sixth Amended Complaint is untimely and is dismissed with prejudice.

*Count IV*

Count IV of Plaintiff's Sixth Amended Complaint alleges unauthorized public disclosure of personal information, in violation of the Privacy Act.

The Privacy Act prohibits unconsented disclosures of information, specifically requiring that:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless the disclosure of the record would be . . . for a routine use . . .

5 U.S.C. § 552a(b)(3). "Routine use" is defined as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). The Privacy Act further requires that "[e]ach agency that maintains a system of records shall . . . publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records, which shall include . . . each routine use of the records contained in the system . . ." 5 U.S.C. § 552a(e)(4)(D).

In accordance with this mandate, the DOJ has published a set of Blanket Routine Uses ("BRUs"), which "describe those types of disclosures which . . . [u]nless this or other published notice expressly provides otherwise . . . shall apply, without need of further implementation, to every existing FBI Privacy Act system of records and to all FBI systems of records created or modified hereafter." 66 Fed. Reg. 33559 (June 22, 2001). BRU-4 provides, in relevant part, that system records may be disclosed:

> [t]o a court or adjudicative body, in matters in which . . . the FBI or any FBI employee in his or her official capacity . . . is or could be a party to the litigation, is likely to be affected by the litigation, or has an official interest in the litigation, and the disclosure of

14

> system records has been determined by the FBI to be arguably relevant to the litigation.

66 Fed. Reg. 33559 (June 22, 2001).

Here, Jackson alleges that the FBI, through its agent, Jonathan C. Haile, publicly disclosed personal information about Jackson, his family, and his friends, without consent. The unconsented disclosure occurred when Haile filed a copy of Jackson's FBI special agent application with the Court on April 23, 2003. Because the Privacy Act allows an individual to bring a civil action against an agency only for violations of his/her rights under the Act, Jackson's arguments concerning the rights of his family members and friends are not at issue here. *See* 5 U.S.C. § 552a(g)(1)–(4). As for the disclosure of his own personal information contained within the application, it is clear that the records were more than just "arguably relevant" to the litigation; the disclosed records, Jackson's denied application for employment as a special agent with the FBI, lie at the very heart of his civil suit. The FBI, now a party in the matter, would have had an interest in the litigation at all times; and it was certain to have been affected by the litigation. Haile's disclosure to the Court of Jackson's application was a routine use of the FBI records.

Jackson has pled a set of facts that fit precisely into an exception to the Privacy Act's prohibition on unconsented disclosures and has, thus, failed to state a claim upon which relief may be granted. As such, Count IV of Jackson's Sixth Amended Complaint is dismissed.

Jackson has repeatedly failed to abide by the orders of the Court, as illustrated by the habitual tardiness of his filings and his failure to respond in any way to the Motion to Dismiss currently before the Court. The Court has given several warnings that continued noncompliance

with the Court's orders might result in his Complaint being dismissed with prejudice. As a result of his continued disregard for the Court's orders and procedures, Count IV is dismissed with prejudice.

*Counts V & VI*

Count V of Jackson's Sixth Amended Complaint alleges an abridgment of the right to free speech, in violation of the First Amendment of the United States Constitution.

Count VI of Jackson's Sixth Amended Complaint alleges an abridgment of the right to due process of law, in violation of the Fifth Amendment of the United States Constitution.

"[T]he Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment." *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 835 (1976). As such, "it is clear . . . that a federal employee is limited to the remedies for discrimination in the workplace provided by Congress in Title VII . . ." and cannot state separate, related claims under the First Amendment. *Patel v. Derwinski*, 778 F. Supp. 1450, (N.D. Ill. 1991); *see also Germane v. Heckler*, 804 F.2d 366, 369 (7th Cir. 1986) (holding that a federal civil service employee cannot state a separate First Amendment claim). Separate claims under the Fifth Amendment are similarly preempted. *See Mlynczak v. Bodman*, 442 F.3d 1050, 1056–57 (7th Cir. 2006).

Here, Jackson asserts that the discriminatory nature of the FBI background investigation and employment selection processes violated his First and Fifth Amendment Rights. Because the appropriate remedy for any such discrimination falls exclusively within the ambit of Title VII's provisions, he cannot state a separate claim for relief under either the First or Fifth Amendment. Accordingly, Counts V and VI of Jackson's Sixth Amended Complaint are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the FBI's Motion to Dismiss is granted. All six counts of Jackson's Sixth Amended Complaint are dismissed with prejudice.

Dated: 8-28-07

JOHN W. DARRAH
United States District Court Judge